Pleased to be here. Thank you, Your Honors, for this privilege, actually, to talk to you about this important case. If I may, I'm going to start with a short paragraph written by none other than the DHS. The DHS, by and through undersigned attorneys, responds to the respondents' multiple concurrent filing motions to reopen. The DHS, out of abundance of caution, has no objection to the cases of Ms. Aditha, her child Angelina, being remanded so that Ms. Aditha may present an asylum claim, but does not agree nor stipulate that ineffective assistance of counsel have occurred. So you want to go directly to the motion to reopen here? Yes, Your Honor. So if we're going to look at the motion to reopen, isn't my standard in that situation abuse of discretion? Yes, Your Honor, and arbitrary. And what case says that if the government doesn't object, the BIA must grant the motion? That's what you're going to argue. You're saying the government didn't object, so the BIA should have granted the motion. But I looked for a case to help you, and I couldn't find one. The BIA case of matter of, I'm trying to say the name, Jan Swanson, sets this precedent for that its own ruling. But what that case doesn't say is the BIA is stuck when the government does that. In fact, the BIA is given discretion in that particular case, even with that particular case. So I'm trying to find the case, and I couldn't find it. So then not having found it, I guess I'm trying to figure out what your argument really is. Maybe we just need to go the true argument here about motion to reopen and whether you've got a case to make. Fair enough. So may I then jump to the ineffective assistant of counsel, the Lozada. We met all the requirements of Lozada. Well, I'm not sure you've met them all. Well, may I walk through them? Well, sure, you can go through them. So Lozada says you have to prevail on that. The respondent, Ms. Adifa, has to write a declaration setting forth her relationship with her prior attorney, which she did. She has to give notice to the attorney, which she did, and she has to file a complaint with the bar, which she did. But the notice letter to the attorney was dated 1-18-24, and your motion was filed 1-22-24, which really didn't give the attorney any chance to respond. Judge Smith, I appreciate that question. Well, it's a question because the BIA focused on it. October 30, the BIA decided to deny Ms. Adifa's motion. Right? October 30. Yeah. By the time they found me, it was around November 20. They already went to their attorneys, lost faith, said, okay, we better check another attorney. 20th, November 20. CAR, I filed my petition, obviously, within 30 days. We had a few days left. CAR arrives in my office on December 19. How else would I know? FOIA was filed, nothing on my desk. CAR arrives on December 19. Holidays, Christmas, vacation. By the time I met with them, it was January 3. The petition to reopen is due by January 28. I had 20 days to file two motions to reopen, for him and her. There's no rule that says I have to give her enough time. I would love to have given her enough time, but you've got to understand how on the ground it works. Okay. Let's overlook that a little bit. One in the record says that Rodriguez has an independent claim. That's Ms. Adifa, right? I looked through the record for an independent claim. The only record that I have is that her claims are the same as her husband's. Perfect. Thank you, Judge Smith. I'm hitting right on the issue. She has no claim. She's not even married to him. There's nothing for her. The lawyer completely screwed up. She's not married to her husband. She had nothing. The former lawyer showed up with nothing to the court. They found Doris with nothing. Not a day in court. She's never been heard. So because she was not married, she had nothing. Does that answer your question? Well, really not, because I looked through the record to find out what would be the substance of her independent claim, if she had any. Perfect. And I could not find any. Well, let me, if I may. Can you take the child out, please? If I... Just answer my question. Let me tell you this. She has her own claim because she was... Because we're in this record. It is in this record because I made it in this record. It's part of my motion to reopen your honor for Adifa with the BIA. She's a victim of a domestic violence. Three, four times beating a week by a stepfather that made her mom strip naked and be beaten in front of the kids. Domestic violence is a ground for persecution. Number one. Number two, her stepfather killed a Mara 18 member. They were pursuing them. Mara 18 came actually, and obviously I could get to that, what happened. So she had her own independent claim. It was never asked. Former counsel never asked her. That's all she had to do. Mr. Ballou, I guess if I could come to this, the question of the deadline on the motion to reopen. You did file it within 90 days. And yet as to the core claims, you asserted only a changed country conditions claim, even though you're entitled to, within 90 days, to reopen it generally. I'm looking at the last page of your brief. Do you understand that you're only, what was the basis of your motion to reopen? We see it, but it's kind of hard to parse here. Sure. It's not subject to a filing deadline, though you met the 90 day filing deadline. And the board should treat this motion as timely filed pursuant to the statute, even though you did so. So is your motion to reopen with respect to the core claims simply based on the changed country conditions that you allege? Judge Johnston, we have two motions to reopen. I don't want to focus on the IAC one. I'm more concerned with the asylum. So your question is, did we have 90 days to file a motion to reopen? Yes. We met that deadline, and we introduced new evidence that was never discovered before because... Right, right. But I just, I'm talking about the procedure here now. But you, the new evidence you frame only within the deadline free standard for changed country conditions. I just want to clarify, that is the basis of your claim. So in order to reopen on that motion, as we should understand it, your sole argument there is that it is based on changed country conditions under 240C7 of the INA. That's one, and they did get married. So he has, he's a derivative to his wife's now asylum claim. And his wife has her own fear, Mara... Okay, but that would not, you understand, that generally would not qualify as a changed country conditions claim. It doesn't appear you gave the board an opportunity to address that claim, at least in this reopening motion I'm seeing. We did submit Aditha's, his wife's declaration. But where did you exhaust the legal claim that you could, that you were reopening under the general reopening deadline as opposed to the time barred reopening that relies only on changed country conditions outside of your client's control? Oh, got it, got it. Okay, thank you. To file a motion based on changed country conditions, your honor, yes, we're not time barred. However, you have to file within a reasonable time. So... But you filed within the deadline. You were entitled to all the benefits. You could have reopened with any evidence, but that's not what you presented to the board, right? I presented to the board the fact that the same people who had attempted, who committed the murder at the car wash came back about 30 or 90 days after the IJ decided the case. The IJ decided the case on April 2022. They came back and killed the uncle. I understand that. I'm just trying to understand the procedural posture of it, and it sounds like we're agreed that you were bringing it only under the 240C7 for changed circumstances. Yes. Okay. And obviously, the change, yes, and he's a derivative now on top of that. Do you want to address the regular claim rather than the motion to reopen? Sure. I know you went directly to the motion to reopen, but you've got some more time here. So let's talk about your past treatment claim. In order to get to past treatment, past persecution, you've got to have treatment which rises to the level of persecution on one of the protected grounds, and then committed by the government or forces the government cannot control. And it seems to me that before us, you're arguing about the treatment and about the persecution committed by the government or forces the government cannot control. The past persecution rising to the level of persecution, if I look at the past treatment claim, again, I have to give a lot of discretion, don't I, to the BIA and their decision in that decision-making process? You have to show that, yes, they have... You have to show that they had substantial evidence to sustain what they did. Yes. Okay. So I have here that there on October 20, he was threatened by Christian if he said anything to the police. Shortly thereafter, he sent a letter to Garcia while he was gone. He sent it to the siblings of Rodriguez at that time. And then in June 2021, he pulled a gun and threatened to kill him if he spoke to the police. Now, the BIA says, well, this is bad. There's no question, but he was never harmed. The threats were vague, not menacing, didn't suffer any harm. They were over an eight-month period. He was gone during some of that time. And there was no follow-through. And so, therefore, not enough for past persecution. Now, given my standard of review, which is extremely deferential, don't I have to uphold this decision? Well, no, you don't, Your Honor, because... Well, where do we go that this evidence has no way to support their decision on past treatment? I mean, if I throw in the extra evidence you added on the motion to reopen, that would be a different story. But we're back in the first petition. And now I'm trying to decide what to do here. If I have to deferentially give that decision-maker some help, then it doesn't seem to me there's much to do. In fact, even if I went de novo, it doesn't seem to me that there's really a lot to say that I would come out different on this basis. Throw in the extra affidavits, that's a different question. But they're not here. So then I would be stuck with his decision on past persecution, wouldn't I? Well, we have a Christian who murdered somebody else. He testified to the police that he saw Christian, although the judge says otherwise. I gave you that. And then the police did nothing. He ran away, came back in eight months. Christian is free. He just told the police the man shot somebody and committed a murder. So all you're doing is explaining to me your best story. But I can't take your best story. I have to look at it as, is there anything in this record which would give some credit to what the BIA said? And when I might not even agree, I would have to help them. Then I could move on to future persecution. And with future persecution, I understand there, if we don't have past persecution, we don't have anything that says we have a little leg up. But it seems to me that what you're suggesting is they didn't really concentrate on the country conditions evidence and really tell us what they thought. And so therefore, we shouldn't believe that. Is that your argument? The BIA said nothing, as you know, Judge Smith. They just relied on the IJ. And the IJ said, I don't believe you told the police about Christian very conveniently. So if that... Did they say anything about the country conditions? Well, they said it's under control. I mean, the judge said that it's under control and so on. And that is in fact, Honduras is the biggest, I mean, the most homicide in any country outside of a war zone. So what do I do with these cases that say, even when the country condition evidence is contradictory or ambiguous, the decision maker can decide what evidence to believe and what not to believe? That was Hernandez versus Ashcroft. What do I do with that kind of stuff? You have to now consider, I understand you're concentrating on the initial asylum case handled by an effective assistant of counsel, in my view. His declaration... Well, I'm not talking about motion to reopen now. I'm talking about the original. If we've talked about the motion to reopen, I'm going back to the original. You want to give up on the original and just go with the motion to reopen? I would tell you that being afraid for your life is sufficient persecution. Somebody doesn't have to shoot you. Somebody doesn't have to always follow you. It's enough to know that you are threatened by a gun, by someone who you just witnessed committed a murder. I believe this is sufficient past persecution. That's a great argument, but my standard of review is not just to believe what you said. It's to look at the evidence and see if anything supports what the BIA said about it, which I think there is. That's why I went to future persecution. That was my position on that, or our position, that past persecution has been established by mere virtue of him being threatened by a criminal who the authority let loose. Mr. Golu, you're now two minutes over. We've taken quite a bit of your time with questions, so I'll give you your full five-minute rebuttal, unless my colleagues have any other questions. No, I don't. Okay. Thank you. Ms. Pino. Good morning, Your Honors. May it please the Court, Tatiana Pino for the Attorney General. This Court should respectfully deny the petition for review. The Board do not abuse its broad discretion in denying the motions to reopen based on alleged ineffective assistance of counsel or changed country conditions. And under this Court's highly deferential substantial evidence standard, which Judge Smith highlighted, the record does not compel reversal of the agency's denial of asylum, withholding of removal, or cap protection, because the factual findings underlying those denials are entirely consistent with this Court's precedent and are reasonable on this record. To begin, let's begin with past persecution. Ms. Pino, what's our standard of review for past persecution? It is the highly deferential substantial evidence standard. Don't we have cases suggesting that it's a mixed question and recent guidance from the Supreme Court that also suggests we should view this as a mixed question and perhaps de novo? Your Honors, this Court has decades of precedent that are still good law, saying very clearly that the standard is past persecution. There has been a difference of opinion amongst the judges recently. However, the case law remains good precedent, and that stems from the 1990s, and it also stems from the Supreme Court's case in Elias Zacharias from 1992, making very clear that that is the standard. And the case law also highlights that the inquiry is highly factual. In fact, that comes from a recent case in 2021, that's the Sharma v. Garland case, highlights that as the standard as well. And so it's a fact-bound endeavor, and this Court must apply a case-by-case comparison analysis. Well, that's just it, Ms. Pino. Because that is the mode of analysis that we go over, it does seem like we develop, particularly with respect to threats, a kind of common law with respect to what sorts of threats amount to it. And a lot of the authorities that the government relies on seem distinguishable in various ways, from the concrete threat backed by force and a firearm, and a later attack made against the petitioner. Well, Your Honor, these cases are never going to be identical, so there's always a way that you can find distinguishing facts. However, under the substantial evidence standard, the question is, under the existing precedent, if the agency's finding is reasonable, then it must withstand the standard. And I'd like to just point out a few cases that would make the agency's finding reasonable, the first being Sharma v. Garland. And again, that's a very recent 2021 decision. The court held past persecution was not compelled in arguably worse circumstances. That is, where the police threatened the petitioner several times over many months, detained him once for 20 hours, and most significantly, while he was locked in a room, beat him repeatedly, slapped him with a police baton, shoved him for hours. Right, but in Sharma, the victim didn't change their behavior. This is a case where the alleged threats forced the petitioner in hiding for the better part of a year. Your Honor, that's a common occurrence that we see throughout. That fact exists in almost every asylum case, where there's repeated. So give me another. Let's see. So we have... Ms. Pino, before you cite all those cases, and I'm sorry to interrupt, but my worry about citing these cases on one side or the other side is that for years we've used this substantial evidence standard to review, and so therefore, even though there have been tough cases either way, if the IJ and the BIA came down a certain way with those tough cases, based on our standard of review, we had to sustain what they did, because that was all we could do until we got this new idea that it might be the novo review. And so I'm trying to say, when you're looking at these cases you're citing, did the IJ or the BIA come out the way we did, and did we just substantially sustain what they did under the standard of review? Because as I looked at the cases to try to find cases, the novo review, which would change the result here, I couldn't find any that would change the result on the novo review. That was dead on, this is what happened, this is how it happened, and we came out a different way. It was all about the standard of review. As it, that should always be the first, that should set the tone for the court's review, as you all know, and it is a highly deferential standard, and it's under that standard, it's a high bar for reversal, and that is the court can reverse only if no reasonable fact finder, that is, no other immigration judge in the country, could have found as the immigration judge did here. Again, granted, but okay, grant the substantial evidence, but one rationale for substantial evidence is that, in this case, the decision maker, the IJ, is considering all the evidence. And some of the things that they rely on, I mean, first of all, the, I mean, is the idea that this is a vague threat, isn't that a mischaracterization of what happened, a vague threat where you have the means, the motive, and it's communicated to the petitioner? How is that vague? I guess our concern where substantial evidence starts to give way is that the IJ doesn't seem to be fully appreciating the record in their decision that we have to review. Well, Your Honor, the record shows that the two threats that were made were, the first one was, you will be next if you speak with police, and the second was, there will be great consequences. You will be next what? What do you think next refers to there? We will kill you. It was on the heels of the murder at the crime scene. And that was vague and not credible, even though the person had just murdered someone. Well, we know that that same assailant approached him a second time eight months later, allowed eight months to go by, approached him a second time, had the opportunity to carry out a threat. And did the IJ appreciate why eight months had gone by, because in fact the petitioner had gone into hiding in another town? Your Honor, I'm not even sure that that's an established fact of the record. It is the testimony of the petitioner in front of the IJ. Well, perhaps the reasons for the eight months were not expressly discussed in the decision. But again, that's a fact that we see in countless asylum cases. And that fact is not dispositive one way or another that they were supposedly in hiding during this time. And the fact remains that he was confronted a second time with a gun, told him, and was told there will be consequences because he spoke with police. And then all that happened was there was a shove. He fell to the ground and cut his eyebrow and didn't require medical attention. That's all the harm he personally experienced in Honduras. And again, under this Court's deferential standard, it doesn't compel reversal, given the case law. And I will also point out, even if this Court were to disagree with the agency's findings of fact, mere disagreement is insufficient to compel reversal. That's clear from Elias Zacharias, from Sharma, and even Goldie Holder from 2011 says, the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. So you may disagree with the past persecution analysis, but that in itself is not sufficient to compel reversal. Again, it's a very high standard. And as long as it's reasonable under the precedents, which we have cited multiple, which it is, the conclusion cannot be reversed. Well, you're right. There's disagreement, and then there's a suspicion that the IJ did not fully or accurately characterize the record that had been presented before them. And yes, the first concern is not enough to grant a petition, but the second is. We have cases suggesting that the job of the IJ is to review the record and develop it, and that's what merits a substantial evidence review. And so I guess that's where the concern comes from on the threat. What about the other questions about government acquiescence? How does that play into this? Well, acquiescence is for CAT, and then there's the unable and unwilling, which is for asylum and withholding of removal. Let's go to unwilling and unable. Okay. Yeah, they're very similar. The only thing that the IJ said is, they didn't report the incident to the police because they thought the police would not help him, and country-conditioned evidence submitted was not sufficient. That's the only thing the IJ said. Now, I looked all over to see what the IJ meant when he said country-conditioned evidence submitted was not sufficient, and I couldn't find anything. In fact, I don't know what that means. I don't know what the IJ was saying. I know what the government argued. They made a great argument. They came up with all kinds of things, but it wasn't in the IJ's decision. Is there any site to a specific place in this record that I can see what the IJ meant when he said country-conditioned evidence submitted was not sufficient? I can see all the things you write, which would give him lots of stuff, but he never wrote it nor said it. You're right. There is no citation. This was an oral decision. Typically, you don't see something in the citation. Well, he ought to come up with something in this country-conditioned, or I can't even review to help him out. I better send it back. Well, again, the standard is highly deferential, substantial evidence. No, that is not. The standard is, he's got to give me something to look at so that I can see that he had something to which I can give some deference. I didn't see anything. He broadly referenced the country-conditioned evidence. You're right that there's no citation. Country-conditioned evidence submitted was not sufficient. That's as broad as you could come up with. He didn't come up with anything that was in the country-conditioned report. He didn't say anything about it. So I went to Hernandez v. Ashcroft, which suggests that when the evidence is contradictory, ambiguous, that we can give to the decision-maker to decide what evidence to believe in. But here, he doesn't say anything, so I can't put Ashcroft in here. I guess I'm trying to figure out, why don't I send this back and get a good decision so I'll know what do I have to agree with or not? Because, Your Honor, it would be futile to send it back. Why futile? Because the country-conditioned evidence that was presented, that we discussed... Because the country-conditioned evidence that you cited in your brief is sufficient? Is that what you're saying? We don't even know if the IJA agrees with that. We take his words broadly, and we can assume that he looked at every report. And this is an immigration judge, and we're talking about Honduras. These are cases that come up all the time. The country-conditioned evidence are likely repeated case by case, and he may know them by the back of his hand. And so, there's no reason to send it back, because the outcome would not be any different. Well, so I guess this comes back to the reopening point. We've talked through the original threat evidence. Now we have murder by the alleged sources of the threat of their family members. That doesn't change the picture for the threat? So to start from the top, we're talking about abuse of discretion, number one. Number two, it doesn't change much, because it doesn't rebut any of the two dispositive grounds that... That they were vague threats. The murder of petitioner's family member doesn't rebut the dispositive finding on past persecution by the IJA, that these threats were vague. Your Honor, under Temeng v. Holder, this Court has said that past harm to close relatives in the home country cannot substitute for harm against the petitioners who are outside of the country when those harms occur. And so, you cannot equate them to harm against the petitioners. And that's number one. And number two, none of this new evidence rebuts the substantially supported finding that the Honduran government did not show that it was unable or unwilling to control the private gang members. But again, but again, when I look at the unwilling or unable to control, I see the same kind of general language that I see when I'm looking at that up under the first idea. There's no specific as to what the IJA or the BIA looked at. The second in the motion to reopen, the BIA looked at to say that the country conditions were enough. I don't know what they looked at. Your Honor... I looked at the decision. It does not tell me what they're really saying. There are plenty of things in the country conditions that I could seize on, which would say there's plenty in there to say that what the petitioner said is right. But because the BIA didn't tell me what they were looking at, only the government in their brief tries to cite what they think it ought to be, I say to myself, why should I deal with that? Why don't I just send it back and let the BIA deal with it? Your Honor, there's not just country conditions evidence at issue here. It's also petitioner's own testimony that rebuts any inclination that the Honduran government is unable or unwilling to control gang members. And we see that because he testified immediately after the 2020 murder at the car wash. The police immediately responded, investigated, and in fact interviewed him. And so that is individualized evidence that substantially supports the unable and unwilling conclusion, in addition to the country conditions evidence which shows that the Honduran government is taking active steps to combat gangs. It may be imperfect, but the imperfect efforts does not equate to being unable or unwilling. And that comes from Hussein V. Rosen, Velazquez Gaspar, and several other presidential cases from this Court. I think, Ms. Pino, the Board there, to the extent it references police action or report, again, as I agree with my friend Judge Smith on this, I think you've argued the record very well, but the BIA did not give us those grounds to review. To the extent it talks about reports to the police, it says that it seems to decide this largely on the fact that there wasn't a police report. But we've, I think, clearly said that that can't be the sole factor for rejecting the motion. It wasn't the sole factor. You're right that a failure to report is not outcome determinative. This Court has said that in Bringus-Rodriguez. In the same decision, though, it says that to, when you're looking at a case where there's a failure to report, you look at prior interactions with authorities. And in this case, there is evidence that petitioners prior. How do we know the Board looked at that? I know we did. You've brought it up. How do we know the Board looked at that in their decision? The Board has affirmed, without opinion, the immigration judge's decision, so you really look at the immigration judge's decision for that. For the underlying petition, right? Yes, we're talking about the merits claims. Yes. And so, yes, go ahead. Go ahead. If you've got more to say to his question. And I guess I was taking us back to the motion to reopen in the Board's decision. Oh, I'm sorry. I didn't realize that. Yeah, so the Board's decision, they don't mention, you know, none of this comes into it. They just say, well, there wasn't a police report, even though we have a death certificate. Yes. Okay. So, yes. I'll address that. So, what the Board ended up saying was there's no evidence that these are materially changed country conditions. The Board itemizes every piece of evidence and really finds there's no persuasive evidence. And with the death certificate, for example, all we have is a death certificate indicating there was a death, but there was no indication of the cause for death. There's also no hospital records and there's no police report to corroborate the allegation that the uncle was shot because these gang members shot him. And so, and I'll also point out, these are all changed personal circumstances, and those alone do not equate to changed country conditions. Well, what about? They do. In Carvey-Garland, they do. Your Honor, what happens, so changed personal circumstances can be relevant. However— Well, let me tell you, Carvey-Garland, our case in 2021 said the change in personal circumstances was entirely out of the control of the petitioner. Thus, the events here could be changed country conditions. That's what we said in Carr. The personal circumstances— And that has to, the motion has to be filed within the 90 days, and it was, and so they could find a changed country conditions based only on personal circumstances. The personal circumstances have to relate to broader changes in the country, is essentially what this Court says in Rodriguez v. Garland, also from 2021. And I'll know Rodriguez-Torres from 2021 as well, says, references to continuing or remaining problems are not evidence of changed country conditions. In this case, what we see is alleged evidence of continued harm by the same people for the same reasons. That is, the gang coming after petitioners, looking for them. Why? Because the male petitioner witnessed a murder back in 2020. It is a continuation of their original claim. And for that reason, the Board did not abuse its discretion in finding this new evidence was immaterial because it was not persuasively indicative of changed country conditions. That is squarely consistent, cannot be contrary to law. Can we look at it under the broader non-time barred standard because he filed within the 90 days, or are we left with just a changed conditions theory because the petitioner failed to exhaust the broader category of 90 day reopening? The way he has framed it, he has framed it solely as changed country conditions based motion to reopen. We've taken you five minutes over and we greatly appreciate your help with this. I want to ask my colleagues if they have any further questions. Ms. Pino, thank you. Thank you. Respectfully, we request you deny the petition. Thank you. Mr. Boulin. I just have one thing to say, so I'm going to take five minutes. Futile to reamend. Really? To protect the family? That sentence is not futile. Far from it, Your Honors. Give Editha a chance. That's all I ask. Reopen this case because we showed how the government is unwilling and unable to control this Mara. They killed twice at the same location, same car wash. First shooting, second shooting. Three people the second time. That's all I got to say, Your Honor. It's not futile. This has to go back. Thank you. Thank you, Mr. Boulin. Thanks to both counsel again for your arguments today and the cases submitted.
judges: SMITH, JOHNSTONE, Christensen